*Decision will be entered under Rule 50.*

NEVADA OIL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43588.    Filed June 22, 1954.

*Sam G. Winstead, Esq.*, for the petitioner.
*J. Marvin Kelley, Esq.*, and *James F. Hoge, Jr., Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* In opening statements of counsel the main issue was emphasized to be whether or not the transactions here involved amounted to a reorganization under section 112 (g) (1) (D) of the Internal Revenue Code. If they did, counsel explained, then petitioner would be required to take the basis of the transferor, the Corporation, in the properties transferred for purposes of depreciation and depletion, and the determination of this issue would in turn affect the question of whether or not recoveries on the money judgment constituted a return of capital or taxable income.

On brief, counsel for respondent state that "The reorganization issue under Section 112 (g) (1) (D) of the Internal Revenue Code is being conceded by respondent."

Nevertheless, respondent presses his contention that payments received in 1947 and 1948 by petitioner on the money judgment were taxable as ordinary income in those years. His argument goes as follows: Although the money judgment was originally entered in favor of the original plaintiffs—the minority stockholders—petitioner was created by them and substituted for them and finally itself recovered the judgment. Further, examination of the items for which the judgment was given discloses that the recovery was for lost profits of the Corporation, and so any payments received by petitioner should be treated as ordinary income, citing *W. W. Sly Manufacturing Co.*, 24 B. T. A. 65, and *Herman J. Sternberg*, 32 B. T. A. 1039.

We do not disagree with the results reached in the cited cases, but we do not believe the facts of the case before us bring it within the ambit of those decisions.

Here, if any taxable transaction took place, it was at the time the original judgment was obtained by the minority stockholders. Whatever took place afterwards in the *nunc pro tunc* final amended judgment was simply a refinement of the original judgment based on agreement of the parties which shortcut needless formalities in order to reach the agreed result. In our view, what happened was this: The minority stockholders originally recovered a cash judgment. It was property in their hands and conceivably represented taxable income to them. Some doubt was entertained as to whether it could be upset on appeal. So the parties got together and settled their differences, *nunc pro tunc* in an agreed final amended judgment. The minority stockholders turned in their stock in the Corporation in exchange for certain corporate leases plus the money judgment which they were to receive under the amended decree. For convenience they formed petitioner corporation to which the leases and judgment were directly transferred. Thus, instead of the minority stockholders first receiving the leases and judgment in exchange for their stock in the Corporation and then transferring the leases and judgment to petitioner in exchange for its stock, these transactions were telescoped in the final amended judgment. If tax consequences flowed from these telescoped transactions, we think, though we need not decide, that the minority stockholders, as such, realized gain or loss when they surrendered their stock in the Corporation in return for the leases and the money judgment. Thereafter, on the transfer of the leases and judgment in exchange for stock in petitioner the leases and judgment became capital in the hands of petitioner and collections of the principal of the judgment by petitioner was tantamount to a return of capital and was not ordinary income.

Though not conclusive, we note in passing that the Federal District Court characterized the transaction as a "partition of the properties" of the Corporation and decreed that the minority stockholders recover

the leases and judgment "in lieu of their said 49.5 per cent of the stock" in the Corporation. Further, the court, in the original judgment recited that the money judgment there decreed "should properly be paid in the nature of a dividend to the stockholders." All of these things indicate that the transactions amounted either to an exchange or sale by the minority stockholders of their stock in the Corporation for the leases and judgment, or a liquidating dividend by the Corporation to the minority stockholders. Whatever the true nature of the transactions, at the time petitioner received the leases and money judgment they became capital in its hands. So far as the leases and lease equipment are concerned, this seems to be admitted by respondent in his concession that the proper basis for depreciation and depletion of those properties to petitioner is their fair market value on January 1, 1945. We perceive no reason why the money judgment in the hands of petitioner should not be similarily treated, it being stipulated that the judgment had a fair market value of $150,000 (its face) on January 1, 1945.

We conclude that principal payments on the judgment received by petitioner are not to be taxed as ordinary income.

*Decision will be entered under Rule 50.*